UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOAN HAWKINS, as personal
representative of the estate of
YOLANDA EVETTA ANDERSON,

                              Plaintiff,

-vs-                                          Case No.  6:07-cv-01261-Orl-PCF-UAM

DONALD F. ESLINGER, in his
official capacity as Sheriff of
Seminole County and individually,
UNKNOWN SEMINOLE COUNTY
DEPUTY SHERIFFS, individually,
THE CITY OF SANFORD, and
UNKNOWN CITY OF SANFORD
POLICE OFFICERS, individually,

                              Defendants.
_____

# ORDER

This case comes before the Court on the following:

1.    Motion to Dismiss (Doc. No. 24, filed Aug. 22, 2007) filed by Defendant Sheriff Donald

      Eslinger; and

2.    Motion to Dismiss (Doc. No. 8, filed Aug. 13, 2007) filed by Defendants City of Sanford and

      Unknown City of Sanford Police Officers.

## Background

On January 27, 2003, Seminole County Sheriff Deputy Richard Anderson shot and killed his

ex-wife, Yolanda Anderson, and then committed suicide.  (Doc. No. 2, ¶ 21, filed Aug. 8, 2007).

Plaintiff Joan Hawkins, the personal representative of Yolanda Anderson's estate, brought this

action against the Seminole County Sheriff, Donald F. Eslinger, "Unknown Seminole County

Deputy Sheriffs," the City of Sanford, and "Unknown City of Sanford Police Officers" (collectively referred to as "Defendants"). (*Id.*) Plaintiff claims that Defendants violated 42 U.S.C. section 1983 ("Section 1983") and were negligent under Florida law, specifically by failing to arrest Deputy Anderson after previous domestic violence reports and returning Deputy Anderson's handgun after seizing it. (*Id.* at ¶¶ 56-62, 76-79).

In September 2002, Deputy Anderson and Yolanda Anderson divorced after seven years of marriage. (*Id.* at ¶ 3). Twice during their marriage Yolanda Anderson reported a disturbance at the Anderson home involving Mrs. Anderson and her spouse. (*Id.* at ¶ 4). Sanford City police and Seminole County deputies investigated both incidents but never arrested Deputy Anderson. (*Id.* at ¶ 6-7).

In late January 2003, Yolanda Anderson called the Sheriff's communication center to report that Deputy Anderson had forced his way into the residence, armed with his handgun, and was causing a disturbance. (*Id.* at ¶ 8). She also reported that Deputy Anderson had fired his handgun at her. (*Id.*) Again, the Sanford police and Seminole County deputies responded but did not arrest Deputy Anderson. (*Id.* at ¶ 9-10). However, the Sheriff's deputies did seize Deputy Anderson's handgun. (*Id.* at ¶ 12).

After the disturbance, Sheriff Eslinger ordered Deputy Anderson to leave Seminole county and stay with his father in North Florida. (*Id.* at ¶12). However, the Sheriff did not order Deputy Anderson to receive a mental health evaluation or undergo counseling. (Id. at, ¶13). In addition, the Sanford police and Sheriff's deputies did not encourage or assist Yolanda Anderson in procuring a restraining order against Deputy Anderson. (*Id.* at ¶ 14).

Sometime before January 26, 2003, a Deputy Sheriff returned Deputy Anderson's gun to him. (*Id*. at ¶ 18).  Armed with that weapon, Deputy Anderson returned to Yolanda Anderson's home on January 26, 2003 and forced his way into the premises. (*Id*. at ¶ 19).  At approximately 12:15 a.m. on January 27, 2003, Deputy Anderson shot and killed Yolanda Anderson and then committed suicide. (*Id.* at ¶ 21).

After the incident, Joan Hawkins gave timely notice to the City of Sanford and Sheriff's office of her intent to file a claim on the behalf of Yolanda Anderson's estate, but she did not file this action until January 26, 2007, one day before the four-year statute of limitations expired. (*Id.* at ¶¶ 26, 29; Doc. No. 24, p. 5).

Plaintiff filed an Amended Complaint on January 30, 2007, which is the subject of Defendants' motions to dismiss. (Doc. No. 2)  Plaintiff's Amended Complaint asserts two claims: (1) a claim against all defendants for deprivation of civil rights under Section 1983, and (2) a claim against Sheriff Eslinger and "unknown sheriff deputies" for negligence under Florida law. (*Id.* at ¶¶ 56-62, 76-79).  Plaintiff did not serve Defendants until July 23, 2007.  Defendants then removed the case to this Court and filed motions to dismiss. (Doc. No. 1, filed Aug. 7, 2007; Doc. No. 8; Doc. No. 24).

In their motions, Defendants argue that Plaintiff has failed to state a claim under Section 1983 or Florida law. (Doc. No. 8, pp. 8-12; Doc. No. 24, pp. 6-20, 24-25).  Defendants also contend that qualified immunity protects them against Plaintiff's Section 1983 claims. (Doc. No. 8, pp. 12-13; Doc. No. 24, pp. 20-23).  Finally, Defendants argue that Plaintiff failed to effect timely service and that Plaintiff has impermissibly sued "Unknown Seminole County Deputy Sheriffs" and

"Unknown City of Sanford Police Officers" as fictitious parties.  Plaintiff failed to file a response to either motion.[1]  (Doc. No. 8, pp. 4-8; Doc. No. 24, pp. 4-6, 23-24).

## Standard of Review

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences that may be drawn from the allegations.  *See Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (abrogated on other grounds).  The Court must limit its consideration to this pleading and the written instruments attached to it as exhibits. Fed. R. Civ. P. 12(b); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint.  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007).

## Analysis

### I.      Sufficiency of the Section 1983 Claim

Defendants make two arguments that Plaintiff has failed to state a claim under Section 1983. First, the City of Sanford ("the City") argues that Hawkins failed to allege the existence of a government policy or custom, a prerequisite to holding a municipality such as the City liable under Section 1983.  (Doc. No. 8, p. 8-10).  Second, Defendants argue that Hawkins has not stated an

---

[1]      Plaintiff has not filed an Memorandum in Opposition to Defendant's Motion as allowed by Local Rule 3.01(b).  Failure to oppose a dispositive motion raises an inference that the party does not object to such motion.  *See, e.g., Freshwater v. Shiver*, Case No. 6:05-cv-756; 2005 WL 2077306, at *2 (M.D. Fla. Aug. 29, 2005). However, the Court has endeavored to analyze the issues presented in Defendants' motions even though Plaintiff has failed to comply with Local Rule 3.01(b).

underlying constitutional violation to support her Section 1983 claim.  (Doc. No. 8., pp. 10-12; Doc. No. 24, pp. 6-10).

### A.    Existence of a Government Policy or Custom

Under Section 1983, a municipality cannot held liable for the actions of its employees on a respondeat superior basis.  *Monell v. New York City Dept. Of Social Servs.*, 436 U.S. 658, 691 (1978).  To state a cause of action against the City, Plaintiff must allege that the deprivation of Yolanda Anderson's rights resulted from an "official policy or custom."  *City of Okla. v. Tuttle*, 471 U.S. 808, 820 (1985).  Federal Rule of Civil Procedure 8(a) requires Plaintiff to plead only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Section 1983 claims against municipalities, which cannot raise qualified immunity as a defense, must only meet the basic requirements of Rule 8(a) and are not subject to a heightened pleading standard.  *Passmore Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 838-39 (11th Cir. 2004).  The City argues that Plaintiff's Amended Complaint violates Rule 8(a) because it fails to allege the existence of a custom or policy, even in conclusory terms.  (Doc. No. 8, p. 9).

The text of the Complaint contradicts the City's argument.  Paragraph 76 of the Complaint alleges that the City of Sanford maintained a "policy or custom" that was established by Seminole County Sheriff Eslinger.  (Doc. No. 2, ¶ 76).  Paragraphs 69 and 70 of the Complaint explain that the Sheriff's policy was to decline to enforce domestic violence laws against Seminole County sheriff deputies.  (*Id.*, ¶ 69-70).  Thus, Plaintiff argues that it was this policy of protecting fellow officers that caused Yolanda Anderson's death.

Plaintiff does not explain how or why the City adopted Sheriff Eslinger's policy.  However, such details are not required by rule 8(a), and Plaintiff's claims against the City are not subject to

a heightened pleading standard.  *Passmore Swann*, 388 F.3d at 838-39.  The Amended Complaint is not exceptionally clear, but it does meet the basic requirement of alleging the existence of a government custom or policy.

### B.      Existence of a Constitutional Violation

Section 1983 provides a remedy for the deprivation, under color of state authority, of a right guaranteed by the "Constitution and laws" of the United States.  42 U.S.C. § 1983 (2006);  *see Monroe v. Pape*, 365 U.S. 167, 171 (1960).  Plaintiff alleges that Defendants violated Yolanda Anderson's (1) right to substantive and procedural due process under the Fourteenth Amendment, (2) right to "liberty," "life," and to "raise children" under the Fourteenth Amendment, and (3) "State-created rights enforceable under the Fourteenth Amendment."  (Doc. No. 2, ¶¶ 77-78). Defendants argue that these rights are either not enforceable under Section 1983 or the facts alleged do not establish a violation.  (Doc. No. 8, pp. 8-12; Doc. No. 24, pp. 6-20).

### 1.      Substantive and Procedural Due Process

Plaintiff contends that the Defendants have violated her right of due process by maintaining a policy of "protecting" Seminole County deputy sheriffs by deliberately declining to enforce Florida's domestic violence laws against these individuals.  (Doc. No. 2, ¶¶ 69-71).  Essentially, Plaintiff argues that Yolanda Anderson's death resulted not from the Defendants' actions, but rather their policy of inaction. (*Id.*)  As a result, Plaintiff's claims implicate the Supreme Court's decisions in *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989) and *Town of Castle Rock, Colo. v. Gonzalez*, 545 U.S. 748 (2005), which analyzed the due process implications of law enforcement's failure to enforce domestic violence laws.

In *DeShaney*, the Court addressed whether the state committed a substantive due process violation by failing to protect a child from his abusive father.  The Court held that the Due Process Clause of the Fourteenth Amendment "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."  *DeShaney*, 489 U.S. at 196.  The affirmative right to governmental aid only arises when the government creates a "special relationship" with an individual.  *Id.* at 198.  Typically, a special relationship will be created between the government and an individual when the government takes the individual into custody.  *Id.*  However, the Court recognized that the government does not create a special relationship with a potential crime victim simply through its knowledge "that a third party poses a special danger to an identified victim."  *Id.* at 197, n.4.

In the absence of a "special relationship," the government's failure to act will only rise to the level of a substantive due process violation through conduct that is "arbitrary, or conscience shocking, in the constitutional sense."  *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *White v. Lemacks*, 183 F.3d 1253, 1258 (11th Cir. 1999).[2]  This standard is to be narrowly interpreted and applied.  *Lemacks*, 183 F.3d at 1259.  Claims that are analogous to "fairly typical

---

[2]     The Eleventh Circuit has also rejected the argument that a state created "special danger" can form the basis of a due process violation.  *See White v. Lemacks*, 183 F.3d 1253, 1259 (11th Cir. 1999).  Previously, Eleventh Circuit case law recognized a due process violation where government officials created a danger and then took inadequate steps to protect the public from that danger.  *See Cornelius v. Town of Highland Lake*, 880 F.2d 348, 352-55 (11th Cir. 1989), *overruled by Lemacks*, 183 F.3d at 1259.  After *Lemacks*, a substantive due process violation only occurs where a special relationship exists, or if the government engaged in arbitrary or conscience shocking behavior.  *Lemacks*, 183 F.3d at 1259.

state-law tort claims," such as negligence, will not rise to the level of a due process violation.  *Id.* (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992)).

*Castle Rock* analyzed the issue of procedural due process, which the *DeShaney* Court expressly declined to address.  *See DeShaney*, 489 U.S. at 194, n.3.  The plaintiff in *Castle Rock* had obtained a restraining order against her husband.  *Castle Rock*, 545 U.S. at 751.  Both the restraining order and the applicable Colorado statute contained language indicating that police officers "shall" arrest in the case of a violation.  *Id.* at 752, 758-59.   Though apparently phrased as mandatory, the Court found that this language was insufficient to produce an individual "entitlement" because the police traditionally had discretion as to the law's enforcement.  *Id.* at 760-62, 764-65.  Moreover, the Legislature had failed to expressly word the law as an entitlement, and the Court was reluctant to find such intent where it was not obvious.  *Id.* at 766.

In sum, the case law requires Plaintiff to meet at least one of three requirements for her due process claim to proceed: (1) the existence of a special relationship; (2) arbitrary or conscience shocking behavior; or (3) an entitlement to have Deputy Anderson arrested.  *DeShaney*, 489 U.S. at 198; *Lewis*, 523 U.S. at 847; *Castle Rock*, 752 U.S. at 766.

### a.      The City of Sanford and Sanford Police Officers

Plaintiff lacks a constitutional basis for her Section 1983 action against the City of Sanford and its police officers.  The crux of her claim is that the City police should have arrested Deputy Anderson when they responded to the various instances of domestic violence reported at the Anderson home.  (Doc. No. 2, ¶¶ 9-16).

Under *DeShaney*, the City and its police officers did not violate Yolanda Anderson's substantive due process rights by their alleged inaction.  Although the police may have been aware

that Deputy Anderson was dangerous, and probable cause may have existed to arrest him on several occasions, Plaintiff does not allege any circumstances that created a "special relationship" between the City and Yolanda Anderson.  The only interaction between Yolanda Anderson and the Sanford police was their response to several domestic violence reports.  *DeShaney* clearly forecloses the possibility that such limited interaction can form a special relationship.  *Deshaney*, 489 U.S. at 197; *see also Waddel v. Hemerson*, 329 F.3d 1300, 1305 (11th Cir. 2003);  *Pinder v. Johnson*, 54 F.3d 1169, 1174-75 (4th Cir. 1995).

Furthermore, Plaintiff has not alleged any arbitrary or conscience shocking conduct by the City or its police officers.  Plaintiff only alleges that the Sanford police failed to arrest Deputy Anderson and did not assist Yolanda Anderson in obtaining a restraining order.  (Doc. No. 2, ¶¶ 7, 14).  Much of law enforcement is left to the discretion of individual police officers, and these choices do not rise to the level of arbitrary or conscience shocking.  *See Castle Rock*, 545 U.S. at 764-65 (discussing the discretionary nature of law enforcement, even when statutes are phrased as mandatory); *White v. Lemacks*, 183 F.3d at 1258 ("[W]hen someone not in custody is harmed because too few resources were devoted to their safety and protection, that harm will seldom, if ever, be cognizable under the Due Process Clause.").

Finally, *Castle Rock* forecloses Plaintiff's claim that she had an entitlement to have Deputy Anderson arrested.  (Doc. No. 2, ¶ 78).  Florida's domestic violence laws make arrest permissive, rather than mandatory.  *See* Fla. Stat. § 741.29(3) ("Whenever a law enforcement officer determines upon probable cause that an act of domestic violence has been committed within the jurisdiction[,] the officer may arrest the person or persons suspected of its commission . . . ."); Fla. Stat. § 741.29(4)(b) ("Arrest is the preferred response . . . .").  Nothing in the Florida statutes reveals the

Legislature's intention to create a privately-enforced entitlement to arrest an offender.  *See Castle Rock*, 545 U.S. at 766 (reasoning that the Legislature would be unlikely to create a private entitlement without express language).

### b.      Sheriff Eslinger and the Sheriff Deputies

Similar to her claims against the City, Plaintiff alleges that Sheriff Eslinger and his deputies failed to arrest Deputy Anderson after responding to several domestic violence incidents, constituting a violation of Yolanda Anderson's due process rights.  (Doc. No. 2, ¶ 78).  Under the current case law, the failure to arrest Deputy Anderson and assist Yolanda Anderson in obtaining a restraining order cannot form the basis of a due process violation.  *DeShaney*, 489 U.S. at 197-98; *Lewis*, 523 U.S. at 847; *Castle Rock*, 752 U.S. at 766.

However, Plaintiff alleges one additional fact against Sheriff Eslinger and his deputies that requires further analysis.  Plaintiff claims that Sheriff Eslinger and his deputies seized and then improperly returned Deputy Anderson's firearm in violation of section 933.14(3), Florida Statutes. (Doc. No. 2, ¶¶ 59-63).  Section 933.14(3) provides: "No pistol or firearm taken by any officer with a search warrant or without a search warrant upon a view by the officer of a breach of the peace shall be returned except pursuant to an order of a trial court judge."

Plaintiff's additional allegation is still insufficient to constitute a due process violation under *DeShaney* and *Castle Rock*.  First, Plaintiff has not shown the existence of a "special relationship" necessary to establish a substantive due process violation.  *Lemacks*, 183 F.3d at 1257-58 (11th Cir. 1999).  Only custodial care will establish a "special relationship." *Id.*  Furthermore, the special relationship exists between the government and the person in custody, not potential victims put at

risk by releasing the person in custody. *Id*. at 1259. Thus, seizing Deputy Anderson's handgun did not create a special relationship between the Sheriff's office and Yolanda Anderson.

Second, the Sheriff's alleged conduct was not arbitrary or conscience shocking. The Eleventh Circuit has cautioned courts to interpret this standard narrowly and not to transform ordinary tortious behavior into a due process violation. *Lemacks*, 183 F.3d at 1258-59. Plaintiff's allegations are insufficient to constitute a substantive due process violation because she has not alleged behavior that is more egregious than a "fairly typical state-law tort claim[]." *Id*. at 1259.

Finally, section 933.14(3) does not create a privately-enforceable entitlement to have Deputy Anderson's handgun kept from him. Section 933.14(3) is in the middle of series of subsections dealing with the return of all sorts of seized property. *See* Fla. Stat. § 933.14. While the subsection uses the word "shall," the *Castle Rock* Court found that the use of mandatory phrasing, alone, does not create an entitlement. *Castle Rock*, 545 U.S. at 760. Nothing in the statute evidences an intent to create an "entitlement" to the statute's enforcement. *See* Fla. Stat. § 933.14. To the contrary, the statute appears to be primarily concerned with creating a procedure to return seized property. *Id*. Thus, Section 933.14 does not form an entitlement, and no procedural due process violation occurred.

### 2.     Right to Liberty and other Constitutional Violations

Plaintiff alleges that Defendants violated Yolanda Anderson's right to "liberty" and her rights to "life" and "to raise her children." (Doc. No. 2, ¶¶ 77-78). These asserted rights are subsumed in her right to "substantive due process" and therefore cannot be an independent basis to allege a violation of Section 1983. *See Daniels v. Williams*, 474 U.S. 327, 331 (1986) (discussing the doctrine of substantive due process and its role in securing individual rights).

### 3.      Rights Created under Florida Law

Plaintiff also argues that Defendants violated Yolanda Anderson's rights under the Florida Constitution. (Doc. No. 2, ¶ 78).  Section 1983 only provides a remedy for violations of federal rights and cannot serve as a basis to assert state-law rights.  *See*, *e.g.*, *Partington v. Scott*, 2:06-cv-310, 2007 WL 1871136, at *2 n.1 (M.D. Fla.  June 28, 2007) (rejecting rights asserted under Florida law as the basis of a Section 1983 claim).

## II.     Qualified Immunity

Plaintiff sues Sheriff Eslinger, "unknown Sheriff deputies," and "unknown members of the Sanford police" in their individual capacities under Section 1983.  Defendants argue that qualified immunity shields them from liability.  (Doc. No. 8, pp.12-13; Doc. No. 24, pp. 20-23).

Qualified immunity "completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). A defendant may raise qualified immunity at the motion to dismiss stage.  *Behrens v. Pelleier*, 516 U.S. 299, 306-07 (1996).  To establish qualified immunity, the government official must first prove that he was acting within his discretionary authority.  *Id.*  at 1234.  Once the official establishes that he acted within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate.  *Id.*  The plaintiff satisfies this burden only by showing that the government official violated a clearly established constitutional right.  *Id.*

Enforcement of the laws, particularly the decisions to arrest suspects and seize property, are classic examples of discretionary authority.  *See, e.g., Vineyard v. Wilson*, 311 F.3d 1340, 1346-47

(11th Cir. 2004) (Arresting and transporting a suspect); *Gonzalez*, 325 F.3d at 1234 (Authorizing a raid to enforce immigration laws).  Thus, the burden shifts to Plaintiff to show that qualified immunity is inappropriate.  Plaintiff has not responded to Defendants' motions and therefore cannot meet her burden.  Furthermore, the facts alleged do not establish a violation, let alone a "clear violation," of Yolanda Anderson's constitutional rights.  *See Deshaney*, 489 U.S. at 196; *Castle Rock*, 545 U.S. 748.  Accordingly, Sheriff Eslinger, his deputies, and the unknown Sanford police officers are entitled to dismissal of Plaintiff's Section 1983 claim based on qualified immunity.

## III.      State-law Negligence Claims

Plaintiff alleges that Sheriff Eslinger and his deputies are liable under Florida law for wrongful death.  Plaintiff specifically alleges that the Sheriff's office violated Florida Statute section 933.14(3) and committed negligence *per se* by returning Deputy Anderson's gun. (Doc. No. 2, ¶¶ 60-62).  In response, Sheriff Eslinger and his deputies argue that Plaintiff's negligence claim fails because Defendants owed no duty of care to Yolanda Anderson.  (Doc. No. 24, pp. 24-25).

Under Florida law, law enforcement officials owe no duty of care to a victim of a criminal offense that might have been prevented through reasonable law enforcement action.  *Everton v. Willard,* 468 So. 2d 936, 938 (Fla. 1985).  A duty of care only arises when a "special relationship" exists between the victim and law enforcement agency.  *Id.*  The Sheriff and his deputies concede that some Florida cases have found a "special relationship" to exist where police failed to follow domestic violence laws that prohibit the release of a suspect without a court order.  *See Estate of Brown ex rel. Brown v. Woodham*, 840 So. 2d 1105, 1106-07 (Fla. 1st DCA 2005); *Simpson v. Brown*, 700 So. 2d 78 (Fla. 3d DCA 1997).  In addition, some Florida cases have found a special relationship to exist where the police's conduct creates a "foreseeable zone of risk." *City of Pinellas*

*Park v. Brown*, 604 So. 2d 1222, 1225 (Fla. 1992) (Police created a foreseeable zone of risk by engaging in a high-speed chase through densely populated area, despite department regulations requiring police to discontinue pursuit in such instances.); *Sams v. Oelrich*, 717 So. 2d 1044, 1047 (Fla. 1st DCA 1998) (Police officer created a foreseeable zone of risk by bringing a dangerous suspect into a hospital and failing to provide adequate protection for the hospital staff.).

*Woodham* involved a sheriff's decision to release a domestic violence suspect without bringing him before a judge, as required by section 741.2902(1), Florida Statutes. *Woodham*, 840 So. 2d at 1105. The suspect immediately returned home and killed his wife's romantic companion. *Id.* at 1105-06. The Court found that the sheriff owed the victim a duty of care because section 741.2902(1) requires a judge consider the danger posed to family members before releasing a domestic violence suspect. *Id.* at 1107. The Court reasoned that Florida's statutes regarding custody of persons accused of domestic violence, when considered together, codified "the special-duty exception mentioned in *Everton* [*v. Willard*]" and the Restatement (Second) of Torts, section 319. *Id.* at 1107.

The Sheriff and his deputies correctly distinguish *Woodham* and *Simpson* as inapplicable to this case. First, *Woodham* recognized that the defendant had no statutory duty to arrest in the first place. Similarly, in the instant case, the Sheriff and his deputies did not owe a duty to Yolanda Anderson to arrest her husband. *Id.* at 1106. Second, the statutes considered in *Brown* specifically require the court to consider the potential harm to others before releasing a domestic violence suspect. *Id.* at 1108. In contrast, section 933.14(3) requires that a firearm, seized during a breach of peace, be returned only by court order. Fla. Stat. § 933.14(3). There is no indication that the Legislature sought to codify in section 933.14(3) the "special duty" exception discussed in *Everton*

*v. Willard*.  Specifically, the Legislature failed to mention any particular class of victims to which a duty of care might be owed.  *Compare Woodham*, 840 So. 2d at 1108 (discussing how section 741.2902(1) requires a judge to consider the potential harm to others when deciding whether to release a domestic violence suspect).

However, the cases recognizing a duty of care where the police create a "foreseeable zone of risk" squarely apply to the instant case.  *See City of Pinellas Park*, 604 So. 2d at 1225; *Sams*, 717 So. 2d at 1047.  The Sheriff and his deputies were aware that Deputy Anderson had been involved in several domestic violence disputes with his wife, including one incident where Deputy Anderson fired his gun.  (Doc. No. 2, ¶¶ 6-8).  When the Sheriff and his deputies returned Deputy Anderson's firearm without a court order, they took an affirmative act that created a zone of risk to Yolanda Anderson.  *Sams*, 717 So. 2d at 1047.  At that point, a special relationship was established, and the Sheriff and his deputies owed Yolanda Anderson a duty of reasonable care to "lessen the risk."  *Id.*

While Plaintiff has sufficiently pled negligence under Florida law, her claim can only proceed against Sheriff Eslinger in his official capacity.  Florida Statute section 768.28(9)(a) provides immunity for a police officer sued in his individual capacity, unless the officer  acted outside the scope of employment or with malice, bad faith, or reckless disregard.  Fla. Stat. § 768.28(9)(a); *see also Willingham v. City of Orlando*, 929 So. 2d 43, 47-48 (Fla 5th DCA 2006). Plaintiff does not make such allegations against Sheriff Eslinger or his deputies.  Therefore, her claims against those defendants in their individual capacities are barred by section 768.28(9)(a).[3]

---

[3]      The Court will not address Plaintiff's failure to effect timely service or identify the fictitious parties that she sues.  However, if Plaintiff chooses to amend her Complaint, she should take care to follow the service requirements of the Federal Rules of Civil Procedure.  Further, Plaintiff should either identify the fictitious
(continued...)

## Conclusion

Based on the foregoing:

1.     The Court **GRANTS** in part Defendants' Motions to Dismiss (Doc. Nos. 8, 24) as to Plaintiff's Section 1983 claim against all Defendants.  Plaintiff's Section 1983 claim against all Defendants is **DISMISSED** without prejudice.

2.     The Court **GRANTS** in part Defendants' Motions to Dismiss (Doc. Nos. 8, 24) as to Plaintiff's Florida Wrongful Death Action against Sheriff Eslinger and "Unknown Seminole County Deputy Sheriffs" in their individual capacities (Doc. No. 2). Plaintiff's Florida Wrongful Death Action against Sheriff Eslinger and "Unknown Seminole County Deputy Sheriffs" in their individual capacities is **DISMISSED** without prejudice.

3.     The Court **DENIES** Defendant Sheriff Eslinger's Motion to Dismiss (Doc. No. 24) as to Plaintiff's Florida Wrongful Death Action against Sheriff Eslinger in his official capacity (Doc. No. 2).

Plaintiff's Wrongful Death Action against Sheriff Eslinger in his official capacity remains pending before this Court.  Plaintiff shall have leave to file an amended complaint within ten (10) days from the date of this Order.  If Plaintiff elects not to file an amended complaint, the case will proceed on the complaint currently pending before the Court.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[3](...continued)
        parties or explain why she is unable to do so.  *See Plant v. Doe*, 19 F. Supp. 2d 1316, 1319-21 (S.D. Fla. 1998).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on September 20, 2007.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record