UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOAN HAWKINS, as Personal Representative
of the Estate of Yolanda Evetta Anderson,

**Plaintiff,**

-vs-                                                    Case No.  6:07-cv-1261-Orl-19UAM

DONALD F. ESLINGER in his official
capacity as Sheriff of Seminole County,
Florida; and THE CITY OF SANFORD,

**Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1.      Motion to Dismiss Second Amended Complaint by Defendant Sheriff Eslinger (Doc. No.
        37, filed Oct. 22, 2007);

2.      Motion of Defendant City of Sanford to Dismiss Plaintiff's Second Amended Complaint
        (Doc. No. 39, filed Oct. 23, 2007);

3.      Response of Plaintiff and Memorandum of Law in Opposition to Motions of Defendant
        Sheriff and City to Dismiss Second Amended Complaint (Doc. No. 40, filed Nov. 5, 2007);

4.      Renewed Motion to Dismiss Second Amended Complaint by Defendant Sheriff Donald
        Eslinger (In Response to Second Service of Process) (Doc. No. 47, filed Dec. 26, 2007);

5.      Amended Renewed Motion to Dismiss Second Amended Complaint by Defendant Sheriff
        Donald Eslinger (In Response to Second Service of Process) (Doc. No. 48, filed Dec. 26,
        2007);

6.      Amended Motion of Defendant City of Sanford to Dismiss Plaintiff's Second Amended Complaint and Memorandum of Law (Doc. No. 51, filed Jan. 9, 2008);

7.      Response of Plaintiff and Memorandum of Law in Opposition to (Amended) Renewed Motions of Defendants Sheriff and City of Sanford to Dismiss Second Amended Complaint (Doc. No. 52, filed Jan. 9, 2008); and

8.      Revised Amended Motion of City of Sanford to Dismiss Second Amended Complaint (Doc. No. 53, filed Jan. 10, 2008).[1]

### Background

Yolanda Anderson was murdered by her ex-husband, Seminole County Sheriff's Deputy Richard Anderson, in January of 2003. (Doc. No. 27 at ¶ 29; Doc. No. 8, filed Aug. 13, 2007, at 2.)  Approximately four years later, Plaintiff Joan Hawkins brought this suit on behalf of Yolanda Anderson's estate against Defendants Seminole County Sheriff Donald Eslinger, the City of Sanford, unknown sheriff's deputies, and unknown Sanford police officers, alleging violations of 42 U.S.C. section 1983 ("section 1983") and Florida common-law.  (Doc. No. 2, filed Aug. 7, 2007.) Defendants removed the case to federal court on the basis of federal subject matter jurisdiction and then moved for dismissal of Plaintiff's claims.  On September 20, 2007, the Court dismissed all of Plaintiff's claims except for a negligence claim under Florida common-law against Sheriff Eslinger in his official capacity. (Doc. No. 25, filed Sept. 20, 2007.)  Plaintiff then filed a Second Amended Complaint which (1) reasserts a section 1983 claim against Sheriff Eslinger, (2) asserts Florida common-law claims against the City of Sanford, and (3) adds an additional common-law claim against Sheriff Eslinger.  Defendants move to dismiss these new claims.

---

[1]      A motion to disqualify Plaintiff's counsel is currently pending before this court and has been referred to the Magistrate Judge.  (Doc. No. 44, filed Dec. 3, 2007.)  The motion to disqualify will not be addressed by the Court at this time.

### A.      General Factual Background

Deputy Richard Anderson and Yolanda Anderson divorced in September of 2002 after seven years of marriage.  (Doc. No. 25 at 2.)  Twice during their marriage, Yolanda Anderson reported disturbances at the Anderson home involving her and Deputy Anderson.  (*Id.*)  In January of 2003, several months after the divorce, Yolanda Anderson called the Sheriff's communication center to report that Deputy Anderson had forced his way into her home and was again causing a disturbance. She also reported that Deputy Anderson had fired his handgun at her.  (*Id.*)  The Sanford police and Seminole County sheriff's deputies responded to the call, seizing Deputy Anderson's handgun but choosing not to arrest him.  (*Id.*)  After the incident, Sheriff Eslinger ordered Deputy Anderson to stay with his father in North Florida.  (*Id.*)  However, the Sheriff did not assist Yolanda Anderson in obtaining a restraining order or require Deputy Anderson to undergo counseling.  (*Id.*)

Florida law sets forth certain procedures for police to handle domestic violence incidents. Section 741.29(3) of the Florida statutes states that "[w]henever a law enforcement officer determines upon probable cause that an act of domestic violence has been committed within the jurisdiction[,] the officer may arrest the person or persons suspected of its commission . . . ." Section 741.29(4) explains that arrest is the "preferred response" in this situation.  Finally, sections 741.30(9)(b) and 741.2901(3) require an arrested suspect to be held until the suspect is brought before a judge for a bail determination.  Plaintiff contends that Defendants failed to follow these provisions.

Sometime before January 26, 2003, a sheriff's deputy returned the seized handgun to Deputy Anderson.  (Doc. No. 25 at 3.)  According to Plaintiff, the deputy's actions violated section 933.14(3) of the Florida Statutes, which provides "[n]o pistol or firearm taken by any officer with a search warrant or without a search warrant upon a view by the officer of a breach of the peace shall

be returned except pursuant to an order of a trial court judge."  Armed with his handgun, Deputy

Anderson returned to Yolanda Anderson's home on January 26, 2003, and forced entrance.  (Doc.

No. 25 at 3.)  Just after midnight, Deputy Anderson shot and killed Yolanda Anderson and then took

his own life.  (*Id.*)

### B.        The Court's September 20, 2007, Order

Yolanda Anderson's mother filed this lawsuit on January 26, 2003, just one day before the

four-year limitations period expired.  Her First Amended Complaint asserted claims under section

1983 against Sheriff Eslinger, unknown Seminole County deputy sheriffs, the City of Sanford, and

unknown Sanford police officers.  (*Id.*)  Plaintiff contended that Defendants violated Yolanda

Anderson's rights to substantive and procedural due process under the Fourteenth Amendment by

refusing to arrest Deputy Anderson.[2]  (*Id.*)  Plaintiff also alleged that Sheriff Eslinger and the

deputies were liable under section 1983 for returning Deputy Anderson's handgun without a court

order.  (*Id.*)  Plaintiff's First Amended Complaint asserted a second set of claims under Florida

common-law against Sheriff Eslinger and the unknown sheriff deputies.  (*Id.*)  Plaintiff alleged that

the Sheriff and his deputies were negligent *per se* for returning Deputy Anderson's firearm without

a court order and failing to arrest Deputy Anderson.  (*Id.*)

Although Plaintiff filed her suit before the limitations period expired, she did not serve her

complaint on Defendants until 174 days after filing.  (Doc. No. 8-1, filed Aug. 13, 2007.)

Defendants filed motions to dismiss, arguing that Plaintiff had failed to effect timely service and did

---

[2]        Plaintiff also alleged violations of various other provisions of the Federal and Florida
Constitutions.  The Court dismissed these claims for the failure to state a claim upon which relief
could be granted, and she does not reassert them in her Second Amended Complaint.  (Doc. No. 25
at 11-12.)

not plead claims upon which relief could be granted.  (Doc. No. 8; Doc. No. 24, filed Aug. 22, 2007.)  Plaintiff did not file a response.

The Court ruled on Defendants' motions on September 20, 2007, first addressing Plaintiff's section 1983 claims and the specific issue of whether Plaintiff had pled an underlying due process violation.[3]  (Doc. No. 25); *Hawkins v. Eslinger*, 6:07-cv-1261-Orl-PCF-UAM, 2007 WL 2757375, at *1 (M.D. Fla. Sept. 20, 2007).   The Order explained that the Supreme Court has provided three grounds under which a plaintiff may establish a due process violation for law enforcement's failure to enforce the law.  (Doc. No. 25 at 8.)  First, a plaintiff may demonstrate that the government established a "special relationship" with the victim by taking the victim into custody.  (*Id.* (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 198 (1989)).)  Second, the Plaintiff may demonstrate that the government acted in a manner that was "arbitrary, or conscience shocking, in the constitutional sense." (*Id.* (citing *White v. Lemacks*, 183 F.3d 1253, 1258 11th Cir. 1999)).)  Third, a plaintiff may establish that the victim had a statutory entitlement to have a particular person arrested, and that the government failed to arrest the person despite being directed by the statute to do so.  (*Id.* (citing *Town of Castle Rock, Colo. v. Gonzalez*, 545 U.S. 748, 766 (2005)).)

Turning to Plaintiff's claims against the City of Sanford and its police officers, the Court concluded that Plaintiff failed to plead an underlying constitutional violation.  (*Id.* at 8-10.)  First, because the City never took Yolanda Anderson into custody, Plaintiff did not establish a special relationship between Yolanda Anderson and the City.  (*Id.*)  Second, the City's failure to arrest Deputy Anderson could not be characterized as "conscience shocking" in light of the discretionary

---

[3]        The Court determined that Plaintiff had adequately pled the existence of a "custom or policy" sufficient to make the City of Sanford liable in its official capacity.  (Doc. No. 25 at 5-6.)

nature of law enforcement and Florida's domestic violence arrest statutes.  (*Id.*)  Finally, section 741.29 of the Florida Statutes, which does not mandate arrest of a domestic violence suspect, foreclosed the possibility of creating a statutory entitlement to have Deputy Anderson arrested.  (*Id.*)

For the same reasons, the Court rejected Plaintiff's claim against Sheriff Eslinger for failing to arrest Deputy Anderson.  (*Id.* at 10-11.)  The Court also determined that Sheriff Eslinger did not violate Yolanda Anderson's constitutional rights by prematurely returning Deputy Anderson's firearm.  (*Id.*)  The Sheriff's seizure of Deputy Anderson's firearm did not create a special relationship with Yolanda Anderson because a special relationship exists only between the government and a person in custody.  (*Id.*)  Second, the Sheriff's actions were not "conscience shocking" because Plaintiff did not allege behavior more egregious than a "fairly typical state law tort claim[]."  (*Id.* (citing *Lemacks*, 183 F.3d at 1258-59).)  Finally, section 933.14(3) of the Florida Statutes did not create a statutory entitlement to have a handgun withheld from a suspect.  (*Id.*)  Although it used mandatory phrasing, the statute was in a series of subsections dealing with the return of seized property and bore no legislative intent to create an entitlement.[4]  (*Id.*)

The Court next turned to Plaintiff's common-law negligence claims against Sheriff Eslinger and his deputies.  (*Id.* at 13.)  Analyzing Florida case law, the Court determined that Plaintiff's claims implicated two theories of negligence.  (*Id.*)  The first theory stemmed from a series of Florida cases which found negligence where the police arrested a domestic violence suspect and then released him without following statutory procedures, allowing the suspect to harm a third person once released.  (*Id.*)  However, this theory of negligence was inapplicable to Plaintiff's claim because Deputy Anderson was never arrested, and "law enforcement officials owe no duty of care

---

[4]     Since Plaintiff failed to allege an underlying constitutional violation, the Court also concluded that qualified immunity applied to all defendants sued in their individual capacities under section 1983.  (Doc. No. 25 at 12-13.)

to a victim of a criminal offense that might have been prevented through reasonable law enforcement action."  (*Id.* (citing *Everton v. Willard*, 468 So. 2d 936, 938 (Fla. 1985)).)

Although police owe no duty to the general public, the Court identified a second series of cases which found negligence where the police created a "foreseeable zone of risk" and failed to protect members of the public from the resulting danger.  (*Id.* at 13-14 (citing *City of Pinellas Park v. Brown*, 604 So. 2d 1222, 1225 (Fla. 1992)).)  The Court determined that this second theory of negligence was applicable because Sheriff Eslinger created a "zone of risk" to Yolanda Anderson by allowing Deputy Anderson's gun to be returned.[5]  (*Id.* at 15.)  As a result, the Court denied Sheriff Eslinger's motion to dismiss Plaintiff's negligence claim.  (*Id.*)

Finally, in a footnote, the Court declined to address Defendants' argument that the case should be dismissed for failure to effect timely service.  (*Id.* at 15 n.3.)  The Court instructed Plaintiff to carefully the follow the requirements of the Federal Rules of Civil Procedure with regard to the service of future pleadings.  (*Id.*)

### C.     Plaintiff's Second Amended Complaint

Plaintiff elected to file an Second Amended Complaint in which she asserts: (1) a common-law negligence claim against Sheriff Eslinger for releasing Deputy Anderson from custody; (2) a common-law negligence claim against the City of Sanford for releasing Deputy Anderson from custody; and (3) a claim under section 1983 against Sheriff Eslinger for violating Yolanda Anderson's Fourteenth Amendment rights to equal protection and substantive due process.  (Doc. No. 27.)  Plaintiff also reasserts her common-law negligence claim against Sheriff Eslinger for returning Deputy Anderson's handgun without a court order.  (*Id.*)

---

[5]     Plaintiff was limited to asserting a negligence claim against Sheriff Eslinger in his official capacity because section 768.28(9)(a) of the Florida Statutes provides qualified immunity for a police officer sued in his individual capacity.  (*Id.* at 15.)

The general factual background of Plaintiff's allegations remain unchanged.  However, the Second Amended Complaint alleges several additional facts in support of her new claims.  With respect to her common-law negligence claims against the City of Sanford and Sheriff Eslinger, Plaintiff still concedes that Defendants did not formally arrest Deputy Anderson in January of 2003 when they responded to a disturbance at Yolanda Anderson's house.  (Doc. No. 27 at ¶ 17.) However, later in the Complaint, Plaintiff alleges that during the same incident Defendants detained Deputy Anderson for "over thirty minutes . . . . constitut[ing] a de facto arrest . . . ."  (*Id.* at ¶ 60.)

Next, Plaintiff alleges additional facts in support of her section 1983 claims.  Plaintiff contends that Sheriff Eslinger created a policy of deliberate and selective non-enforcement of domestic violence laws against his deputies.  (*Id.* at ¶ 86.)  She lists several specific examples, including one incident where Sheriff Eslinger allegedly battered his own wife by throwing a stack of divorce papers at her head.  (*Id.* at ¶ 96-97.)  Plaintiff alleges that this discriminatory policy violated Yolanda Anderson's rights to "equal protection of the law and substantive due process" because it served  "no legitimate or rational governmental purpose or basis."  (*Id.* at ¶ 104.)  Rather, Plaintiff explains, the custom was to "serve the illegitimate purpose of protecting Sheriff [Eslinger's] deputies from equal application of the law and protecting the public images of the Sheriff's Office and his deputies."  (*Id.* at ¶ 105.)  Plaintiff also alleges that the Sheriff and his deputies knew that the policy "inherently discriminate[d] against and ha[d] a disparate impact upon women."  (*Id.* at ¶ 110.)  At the same time, however, members of the general public enjoyed "a very high probability that the domestic violence laws will be enforced . . . ."  (*Id.* at ¶ 111.)

Defendants filed a second round of motions to dismiss.  (Doc. No. 37; Doc. No. 39.)  Both Defendants reassert their previous arguments concerning Plaintiff's failure to timely serve the First Amended Complaint.  (Doc. No. 37 at 5-9; Doc. No. 39 at 4.)  In addition, Sheriff Eslinger argues

that Plaintiff had not stated a valid section 1983 claim or common-law negligence claim for releasing a domestic violence suspect without a court order.[6]  (Doc. No. 37 at 9-16.)  The City of Sanford argues that Plaintiff has not stated a viable common-law claim against the City.  (Doc. No. 39 at 4-10.)

About six weeks after the second motions to dismiss were filed, Plaintiff attempted to serve summonses on both Defendants.  In response, Defendants filed a new round of motions, arguing that the second attempt at service did not cure Plaintiff's previous failure to serve the First Amended Complaint in a timely manner.  (Doc. No. 47; Doc. No. 51.)

### Standard of Review

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences that can be drawn from the complaint.  *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir.1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits. Fed R. Civ. P. 12(d); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ----, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007).

### Analysis

**I.    Compliance with the Local Rules**

---

[6]    Sheriff Eslinger does not challenge the sufficiency of Plaintiff's common-law negligence claim based on the alleged premature return of Deputy Anderson's handgun. (Doc. No. 37 at 4.)

Local Rule 3.01(c) provides that "[n]o party shall file any reply or further memorandum directed to [a] motion . . . unless the Court grants leave." Several motions currently before the court violate this rule. Accordingly, the Court will deny (1) the Amended Renewed Motion to Dismiss Second Amended Complaint by Defendant Sheriff Donald Eslinger (In Response to Second Service of Process) (Doc. No. 48); and (2) Revised Amended Motion of City of Sanford to Dismiss Second Amended Complaint (Doc. No. 53).

The Renewed Motion to Dismiss Second Amended Complaint by Defendant Sheriff Donald Eslinger (In Response to Second Service of Process) (Doc. No. 47) and the Amended Motion of Defendant City of Sanford to Dismiss Plaintiff's Second Amended Complaint and the Memorandum of Law (Doc. No. 51) do not violate Rule 3.01(c) because these motions refer to events which have transpired since the filing of the first two motions to dismiss Plaintiff's Second Amended Complaint.

## II.    Service

Much of the argument before the Court involves Plaintiff's failure to timely serve Defendants. The September 20, 2007, Order passed upon this matter, stating: "The Court will not address Plaintiff's failure to effect timely service or identify the fictitious parties that she sues. However, if Plaintiff chooses to amend her Complaint, she should take care to follow the service requirements of the Federal Rules of Civil Procedure." (Doc. No. 25 at 15 n.3.) The Court did not address the matter because Plaintiff's attorney failed to file a responsive memorandum, and he therefore did not explain whether he had "good cause" for failing to serve Defendants on time. Since the statute of limitations had already run, dismissal for failure to serve would have entirely barred Plaintiff's claim. Cognizant of this outcome, the Court was hesitant to punish Plaintiff for the mistakes of her attorney, both in failing to serve Defendants and failing to submit a responsive memorandum, where no prejudice to Defendants appeared in the record.

Plaintiff's attorney appears to have interpreted the Court's Order as permission to "re-serve" the Defendants, rather than a warning to adhere to Federal Rule of Civil Procedure 5 which governs the service of amended pleadings.  Under that belief, Plaintiff attempted to serve Defendants a second time.  (Doc. No. 47 at 3.)  However, Plaintiff's second service upon Defendants did not cure the deficiency with the first attempt at service.[7]  Service in this case was unquestionably late and violated Federal Rule of Civil Procedure 4(m), which requires service within 120 days of filing the complaint.[8]  Plaintiff bears the burden to justify the late service.

Federal Rule of Procedure 4(m) provides that:

> If a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the Plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

In certain circumstances, a court may extend the period for service even absent the showing of good cause.  *Horenkamp v. Van Winkle & Co., Inc.*, 402 F.3d 1129, 1133 (11th Cir. 2005).  One such circumstance is when "the applicable statute of limitations would bar the refiled action . . . ." *Id.* (quoting Fed .R. Civ. P. 4(m), Advisory Committee Notes, 1993 Amendments).[9]  Whether or not

---

[7]     Serving the Second Amended Complaint would only have cured the deficiency with Plaintiff's first attempt at service if the Court had enlarged the time for service under Rule 4(m) and directed Plaintiff to serve the Second Amended Complaint accordingly.  *See*, *e.g.*, *Fischer v. Fed. Bureau of Prisons*, No. 5:06-cv-407-Oc-10GRJ, 2007 WL 2702341, at *8 (M.D. Fla. Sept. 14, 2007).

[8]     The Florida Rules of Civil Procedure adhere to the same 120 day time limit.  Fla. R. Civ. P. 1.070(j).

[9]     The Eleventh Circuit's decision in *Horenkamp* was based, in large part, on changes made by the 1993 amendments to the Federal Rules of Civil Procedure.  *See Horenkamp*, 402 F.2d at 1133.  The language of Rule 4(m) was recently changed again by the 2007 amendments. However, the 2007 Advisory Committee Notes explain that the amendments to rule 4(m) are "intended to be stylistic only."  Even without this qualification, the changes to Rule 4(m) do not
(continued...)

good cause exists, the decision to extend the period for service lies within the discretion of the district court.  *Id.*

Plaintiff's attorney has not offered any explanation for his failure to serve Plaintiff, and the Court will therefore assume that "good cause" does not exist in this case.  Nevertheless, several considerations militate against dismissal.  First, and most importantly, dismissal of the case without prejudice will bar Plaintiff's action because the statute of limitations has already run.  Second, Defendants cannot point to any prejudice that will result from extending the service period, aside from being required to defend a suit on the merits that may otherwise have been dismissed on a procedural ground.

Defendants are correct that they are easily-located governmental entities and have not attempted to evade service.  Defendants are similarly correct that Plaintiff's attorney appears to have been irresponsible for serving them late, considering that the statute of limitations now bars this action from being re-filed.  But it is important to recognize that the fault in this case rests on Plaintiff's attorney, not Plaintiff.  Because Defendants have not suffered any prejudice, and Plaintiff's action would be barred if it were dismissed and refiled, the Court will extend the period of service under Rule 4(m) to include Plaintiff's late service on both Defendants.[10]

---

[9](...continued)
appear to call the *Horenkamp* holding into doubt.  In particular, the 2007 version of rule 4(m) contains the same provision that was added by the 1993 amendments, and the new wording is not materially different.

[10]    Plaintiff asserts that the Florida Rules of Civil Procedure apply to the issue of whether late service should be excused because the 120 day period for service ran even before this case was removed.  (Doc. No. 40 at 6 (citing *Kimbrough v. City of Cocoa*, No. 6:05-cv-471-Orl-31KRS, 2006 WL 1643364, at *2 (M.D. Fla. June 6, 2006)).)  Florida courts have interpreted Rule 1.070(j) to permit enlargement of the service period without a showing of good cause.  *Chaffin v. Jacobson*, 793 So. 2d 102, 104 (Fla. 2d DCA 2001).  Although federal procedural rules generally apply to law suits removed to federal court, *see Hanna v. Plumber*, 380 U.S. 460, 465
(continued...)

III.     **Sufficiency of Plaintiff's New Allegations**

A.      **Plaintiff's Section 1983 Claim Against Sheriff Eslinger**

Plaintiff asserts a new section 1983 claim against Sheriff Eslinger.  According to the Second

Amended Complaint, Sheriff Eslinger violated Yolanda Anderson's rights of "equal protection of

the law and substantive due process" by creating a policy of non-enforcement of domestic laws with

respect to crimes committed by his deputies.  (Doc. No. 27 at ¶ 104.)  Section 1983 provides a

remedy for the deprivation, under color of state authority, of a right guaranteed by the "Constitution

and laws" of the United States. 42 U.S.C. § 1983 (2006); *see Monroe v. Pape*, 365 U.S. 167, 171

(1960).  Naturally, one of the pleading requirements associated with a section 1983 claim is to plead

an underlying violation of federal law.  *See* § 1983; *Monroe*, 365 U.S. at 171.

Plaintiff attempted to plead a violation of "substantive due process" in her First Amended

Complaint.  The Court dismissed this claim because Plaintiff failed to establish the existence of a

"special relationship" or "conscience shocking" behavior.  (Doc. No. 25 at 6-11.)  Plaintiff does not

plead any new facts in her Second Amended Complaint that fall into one of these categories.

Accordingly, Plaintiff has failed to establish a violation of substantive due process.

The Second Amended Complaint also attempts to establish a violation of equal protection.

The Equal Protection Clause of the Fourteenth Amendment prohibits states from enforcing laws in

an invidiously discriminatory manner.  *Village of Arlington Heights v. Metro. Housing Dev. Corp.*,

429 U.S. 252, 265 (1977).  However, official action will not be labeled unconstitutional solely

because it results in a disproportionate impact on a class.  *Id.*  The plaintiff must show that the

_____

[10](...continued)
(1965), some courts have concluded that state rules governing service of process apply when the
plaintiff attempts service before removal, *see Kimbrough*, 2006 WL 1643364 at *2.  However, in
this case, enlargement is appropriate under either standard.  Thus, the Court will not decide whether
the federal or state rule applies.

official action was motivated, in part, by discriminatory intent against that class. *Id.*; *Washington v. Davis*, 426 U.S. 229, 241-42 (1976). To state an equal protection claim based on the selective non-enforcement of domestic violence laws, Plaintiff must establish that an animus toward women was "a motivating factor" for the enforcement scheme. *Burella v. City of Phila.*, 501 F.3d 134, 148 (3d Cir. 2007); *Watson v. City of Kan. City, Kan.* 857 F.2d 690, 694 (10th Cir. 1988).[11]

Plaintiff does not allege that Sheriff Eslinger's policy was motivated by an animus toward women. Rather, Plaintiff alleges that the purpose of Sheriff Eslinger's policy of non-enforcement was to protect the public image of the Sheriff's department. (Doc. No. 27 at ¶ 105.) In fact, Plaintiff states that women in the general public enjoyed "a very high probability that the domestic violence laws will be enforced," and that only the female partners of deputies were harmed by the policy. (*Id.* at ¶ 111.) This shows at most an indifference to harm against these women, rather than gender-based animus.

Only one fact in the Second Amended Complaint touches upon the issue of discriminatory intent. Plaintiff alleges that Sheriff Eslinger and his deputies knew that their policy of non-enforcement disparately impacted women. (*Id.* at ¶ 110.) However, this allegation does not satisfy the requirement of establishing an animus toward women. Knowledge that a particular outcome will result from one's actions is not tantamount to a motivation to cause that outcome.[12] If knowledge of disparate impact was sufficient, alone, to establish animus, the "motivating factor" inquiry in

---

[11]     This position regarding the non-enforcement of domestic violence laws has been adopted by the First, Second, Third, Fifth, Eight, and Tenth Circuits. *See Shipp v. McMahon*, 234 F.3d 907, 913 (5th Cir. 2000) (collecting cases from other courts of appeal), *overruled on other grounds*, *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002). The Eleventh Circuit has not opined on the issue.

[12]     *See, e.g.*, *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269-70 (1993) (demonstrations against women seeking abortions were not motivated by an animus towards women simply by virtue of the fact that only women have abortions).

*Burella* and similar cases would be rendered meaningless.  In such circumstances, a plaintiff could establish the existence of intentional discrimination merely by demonstrating disparate impact, a result which has been flatly rejected by the Supreme Court.  *Village of Arlington Heights*, 429 U.S. at 265.

As noted by the many other courts that have dealt with similar fact patterns, the policy of non-enforcement alleged in Plaintiff's complaint is disturbing.  *See, e.g., Burella*, 501 F.3d at 149. Even so, bad policy cannot be the basis of an equal protection claim unless that policy is motivated by an animus toward a protected class.  In this case, the facts in the complaint are inconsistent with an animus toward women.  Accordingly, Plaintiff has failed to establish an underlying violation of federal law, and her section 1983 claims must be dismissed.[13]

**B.      Plaintiff's Common-law Negligence Claims Against the City of Sanford and Sheriff Eslinger for the "Release of a Domestic Violence Arrestee"**

In analyzing Plaintiff's common-law negligence claim, the Court's September 20, 2007, Order examined a series of Florida cases which held that police officers were negligent for releasing a domestic violence suspect without a court order, thereby violating sections 741.30(9)(b) and 741.2901(3) of the Florida Statutes.  (Doc. No. 25 at 13-15.)  The Court concluded that these cases were not applicable to Plaintiff's claims because Deputy Anderson was never arrested.  (*Id.* at 15.)

---

[13]      Plaintiff also argues that the Sheriff's policy did not serve a legitimate governmental interest and therefore fails rational basis review. (Doc. 27 at ¶ 114.)  Plaintiff cites to the incorrect test.  "[T]he 'rational relation' standard applies to equal protection challenges to a statute that discriminates on its face, but not to challenges based upon the alleged discriminatory application of a facially neutral statute."  *Strickland v. Alderman*, 74 F.3d 260, 264 n.4 (11th Cir. 1996). Moreover, the many circuit courts which have dealt with facts similar to those at bar have elected to apply the "motivating factor" test first announced in *Watson v. City of Kan. City, Kan.* 857 F.2d 690, 694 (10th Cir. 1988).

Plaintiff's Second Amended Complaint seeks to avoid the same result by alleging that deputy Anderson was detained for thirty minutes, resulting in a "de facto arrest."  (Doc. No. 27 at ¶ 60.)

Section 741.30(9)(b) of the Florida Statutes provides, "If the respondent is arrested by a law enforcement officer under section 901.15(6) or for a violation of section 741.31, the respondent shall be held in custody until brought before the court as expeditiously as possible . . . ."[14]  Once the suspect is brought before a judge, section 741.2901(3) requires the judge to consider the potential harm to family members and spouses before releasing the suspect on bail.  In *Estate of Brown ex rel. Brown v. Woodham*, 840 So. 2d 1105, 1106-07 (Fla. 1st DCA 2005), the court found that section 741.2901(3) codified the "special duty exception" mentioned in *Everton v. Williard* and other cases finding that the police generally do not owe a duty of care to the general public.  The Court reasoned that the legislature intended to impose on the police a duty of care to family members and romantic partners who are endangered by the premature release of a domestic violence suspect.  *Id.*

Plaintiff's argument is creative but ultimately finds no support in sections 741.30(9)(b) and 741.2901(3).  The exception recognized in *Woodham* is shaped by these statutes, and the contours of the resulting duty of care must therefore be defined by the statutory language.  Both sections plainly require an "arrest" to trigger the requirement of bringing a suspect before a judge.  Although "arrest" is not defined in the statute, the legislature presumably intended the term to be understood according to its plain meaning.  *See*, *e.g.*, *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 955 (11th Cir. 2007) (statutory language should be interpreted according to its plain meaning).  Arrest literally means "[t]he taking or keeping of a person in custody by legal authority, especially in response to

---

[14]     Section 901.15(6) allows police to arrest a person suspected of domestic violence without a warrant, and section 741.31 makes it a misdemeanor of the first degree to violate an injunction against domestic violence.

a criminal charge." Black's Law Dictionary 116 (8th ed. 2004).  Construing another Florida statute, the Florida courts have found an "arrest" to occur when the following four factors are present:

> (1) A purpose or intention to effect an arrest under a real or pretended authority; (2) an actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) a communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest; and (4) an understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him.

*Hebert v. State*, 962 So. 2d 1068, 1070 (Fla. 4th DCA 2007) (citing *Kyser v. State*, 533 So.2d 285, 287 (Fla.1988)).[15]   Plaintiff does not allege that there was a communication by the "arresting officer" to Deputy Anderson that he was under arrest, nor would such a communication be consistent with Plaintiff's allegation that Deputy Anderson was detained for thirty minutes without being formally placed under arrest.  (*See* Doc. No. 27 at ¶ 60.)

As Plaintiff notes, Florida courts have also recognized a type of arrest termed a "de facto arrest," in which a person is temporally detained by the police without explicit notice that the person is under arrest.  *Studemire v. State*, 955 So. 2d 1256, 1257 (Fla. 4th DCA 2007) (citing *Reynolds v. State*, 592 So. 2d 1082, 1084 (Fla. 1992)).  Plaintiff argues that the questioning of Deputy Anderson resulted in his de facto arrest, and in doing so triggered a duty to hold him until he was brought before a judge.  Plaintiff contends that "de facto" arrests are recognized by the case law as being equivalent to formal arrests and are therefore sufficient to implicate the *Woodham* special duty exception.  (Doc. No. 40 at 15.)  However, there is no reason to believe that the legislature intended the term "arrest" to include a "de facto" arrest for purposes of sections 741.30(9)(b) and 741.2901(3).  De facto arrests, as they exist in the case law, occur when a suspect is detained without

---

[15]     *Herbert* construes the term "arrest" as it appears in Florida's criminal escape statute. *Herbert*, 962 So. 2d at 1070. The Florida appellate courts do not appear to have defined the term "arrest" as it appears in any other statutes.

probable cause, allowing the police to obtain evidence which the suspect later seeks to suppress. *See*, *e.g.*, *Studemire*, 955 So. 2d at 1256-57.   The concept of "de facto arrest" appears to be borne out of the term "seizure" in the Fourth Amendment and the "custody" requirement of *Miranda v. Arizona,* 384 U.S. 436 (1966).  *See id.* (analyzing whether evidence was gathered during a lawful arrest); *Schoenwetter v. State*, 931 So. 2d 857, 867 (Fla. 2006) (analyzing whether a de facto arrest occurred and therefore met the "custody" requirement of *Miranda*).   It is improbable that the legislature intended the term "arrest" to be defined by an unrelated constitutional-law doctrine concerning the suppression of evidence.

In addition, Plaintiff's interpretation of the term "arrest" to include a "de facto arrest" would cause difficulties with the day-to-day operation of sections 741.30(9)(b) and 741.2901(3).  The term "de facto" means "having effect even though not formally or legally recognized."  Black's Law Dictionary 448 (8th ed. 2004).  The existence of a de facto arrest is recognized after the fact when a criminal defendant moves to suppress evidence.  Thus, even the police are typically unaware when a de facto arrest has occurred.  To adopt Plaintiff's reasoning, therefore, one must believe that the legislature sought to impose an affirmative duty on the police to bring a suspect before a judge in circumstances where the police do not know that they have arrested the suspect.  Moreover, even if police officers could be trained on what constitutes a de facto arrest, they would be required to apply a sophisticated legal test based on the "totality of the circumstances" when determining whether a suspect is to be held or released.  *See Schoenwetter*, 931 So. 2d at 867.  Finally, Plaintiff's interpretation of "de facto arrest" would require the police to hold a suspect for a bail determination whenever the suspect is temporarily detained for questioning at the scene of the incident.  Under such a construction, the duty to hold suspects pursuant to sections 741.30(9)(b) and 741.2901(3) would lack a logical stopping point.  Much more likely, the legislature intended "arrest" to be

defined as it is in *Herbert*, with a requirement that both the arrester and arrestee believe an arrest has occurred.[16]  *Herbert*, 962 So. 2d at 1070.

Plaintiff's argument to the contrary relies heavily on a brief opinion in *Simpson v. City of Miami*, 700 So. 2d 87, 88 (Fla. 3d DCA 1997).  Plaintiff argues that the *Simpson* court concluded that a de facto arrest could trigger the requirements of section 741.30(9)(b).  (Doc. No. 40 at 14-15.) However, Plaintiff's interpretation of *Simpson* is inaccurate. The *Simpson* court reversed a trial court's dismissal with prejudice because it determined that the plaintiff should be given leave to amend her complaint to allege "an arrest."  *Simpson*, 700 So. 2d at 88.  The court noted that the original complaint had alleged that the police secured a suspect, placed him in a police cruiser, and then let him go.  *Id.*  The court did not conclude that such facts constituted a "de facto arrest," nor did it conclude that a "de facto arrest" is sufficient to trigger the requirements of section 741.30(9)(b).  *See id.*

Accordingly, Defendants did not arrest Deputy Anderson at any point, and a special relationship did not exist between Defendants and Yolanda Anderson.  Plaintiff cannot maintain a negligence action against either Defendant based on the "premature release of a domestic violence arrestee."

---

[16]       Furthermore, use of a bright-line test for determining when an arrest has occurred is consistent with the case law interpreting sections 741.30 and 741.2901(3) as codified exceptions to the general rule that the police owe no duty of care to members of the public.  In *Woodham*, the court distinguished the clear commands of section 741.2901(3), which can form a duty of care, from the discretionary decision to arrest a domestic violence suspect, which cannot form a duty of care. *Woodham*, 840 So. 2d at 1108.  Interpreting sections 741.30(9)(b) and 741.2901(3) to include de facto arrests injects a level of discretion back into the statutes, as police officers will be required to make a judgment whether a de facto arrest occurred.  This construction undercuts the reasoning of *Woodham*.

IV.     **Damages for Yolanda Anderson's Pain and Suffering**

Plaintiff has requested damages for the pain Yolanda Anderson suffered before her death and the value to Yolanda Anderson of the loss of her own life.  (Doc. No. 27 at ¶ 75.)  Plaintiff concedes that "hedonic and decedent's pain and  suffering damages" are not allowed by Florida's wrongful death statute but argues that such damages are recoverable under section 1983.  (Doc. No. 40 at 5.) Since Plaintiff's section 1983 claim has been dismissed, and only her state law claims remain, this argument has been rendered moot.  Accordingly, the Court strikes paragraph seventy-five of the Second Amended Complaint to the extent it seeks damages which cannot be recovered under Florida law.  Fla. Stat. § 768.21 (2007).

### Conclusion

Based on the foregoing:

1.      The Motion to Dismiss Second Amended Complaint by Defendant Sheriff Eslinger (Doc. No. 37, filed Oct. 22, 2007) is **GRANTED** in part and **DENIED** in part.  Counts Two and Four are **DISMISSED** without prejudice.  In addition, paragraph seventy-five of Plaintiff's Second Amended Complaint is **STRICKEN**.

2.      The Motion of Defendant City of Sanford to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 39, filed Oct. 23, 2007) is **GRANTED**.  Plaintiff's claims against the City of Sanford are **DISMISSED** without prejudice.

3.      The Renewed Motion to Dismiss Second Amended Complaint by Defendant Sheriff Donald Eslinger (In Response to Second Service of Process) (Doc. No. 47, filed Dec. 26, 2007) is **DENIED**.

4.      The Amended Motion of Defendant City of Sanford to Dismiss Plaintiff's Second Amended Complaint and Memorandum of Law (Doc. No. 51, filed Jan. 9, 2008) is **DENIED**.

5.      The Amended Renewed Motion to Dismiss Second Amended Complaint by Defendant

Sheriff Donald Eslinger (In Response to Second Service of Process) (Doc. No. 48, filed Dec.

26, 2007) is **DENIED**;

6.      The Revised Amended Motion of City of Sanford to Dismiss Second Amended Complaint

(Doc. No. 53, filed Jan. 10, 2008) is **DENIED**.

7.      Count One of Plaintiff's Second Amended Complaint remains pending before the Court.

8.      Plaintiff has one final opportunity to amend her complaint in a manner that complies with

this Order.  If Plaintiff chooses to amend, she must submit her Third Amended Complaint

within **ten (10) days** from the date of this Order.  If Plaintiff elects not to amend, this action

will proceed on the Second Amended Complaint in accordance with this Order (Doc. No.

27).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January _23__, 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record